[Crim. No. 6211. Second Dist., Div. One. Feb. 24, 1959.]

THE PEOPLE, Respondent, v. CAROLYN V. DILLARD, Appellant.

Ettinger & Deutsch and Warren L. Ettinger for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with a violation of section 11500, Health and Safety Code, in that on or about February 19, 1957, she unlawfully had in her possession flowering tops and leaves of Indian Hemp (cannibis sativa). It was further alleged that on September 28, 1954, defendant suffered a prior felony conviction for violation of section 11500 of the Health and Safety Code. Defendant pleaded not guilty and denied the prior conviction. Trial by jury was duly waived and the cause submitted on the transcript of the preliminary examination, each side reserving the right to offer additional evidence, and that all exhibits received at the preliminary examination be deemed received in evidence at the trial, subject to the court's rulings thereon. Defendant was adjudged guilty as charged. Although no evidence was offered by the prosecution as to the prior conviction, on cross-examination, defendant admitted the same. While the court made no finding as to the prior, it appears that defendant was on probation therefor, and at the time judgment was rendered sentencing defendant to state prison, the court revoked the probation granted her on the previous conviction, and sentenced her to state prison, the sentence to run concurrently with the one pronounced in the instant action. From the judgment of conviction in the present case, defendant prosecutes this appeal.

The factual background surrounding this prosecution as revealed by the record is that at approximately 12:30 a. m. on the morning of February 19, 1957, Officers V. Jones and Douglas Roy MacGregor of the Los Angeles Police Department went to the residence of defendant, an apartment at 947 North Vendome Street, in the city of Los Angeles. Officer Mac-Gregor testified that "I received information from a confidential source that the defendant was using narcotics and had a quantity of narcotics in her possession."

"Q. In your opinion was that information reliable? A. It has proven so in the past.

"Q. What do you mean by that, by past? A. I have used this informant on prior occasions.

"Q. Successfully? A. And the information has proved reliable; yes, sir.

"Q. All right. Was the defendant also known to you? A. Yes, sir.

"Q. In what way other than being a dancer, I take it? A. I have known the defendant for a period of approximately two years and I have known her as a narcotic user.

"At that particular time it was heroin."

When they arrived at defendant's apartment, the officers knocked several times on the door of the apartment but received no answer. They were able to observe that the wall fireplace was "going full blast" and formed the opinion that someone was in the apartment. They went to the manager's apartment, identified themselves, explained the circumstances of the visit and asked him whether he would admit them to the apartment. The manager opened the apartment and the officers entered it in his company. A quantity of marihuana seeds was found on the bed. The officers left the apartment and awaited the return of defendant. The latter returned at 2:40 a. m. and was placed under arrest when she reached the front door of the apartment. The officers and appellant entered the apartment and a further search was made. When shown the marihuana seeds defendant asked, "What are they?" Subsequently she stated that some friends of hers had brought the marihuana to her apartment, "Manicured" it, and smoked it and left some for her own use. When questioned about a pipe she stated that she had not used it to smoke marihuana "for a couple of years." She indicated a quantity of marihuana concealed in the toe of a slipper hanging on the closet door.

Officer MacGregor testified further that he had known defendant for some two years prior to the arrest here in question, that when she arrived at her apartment he placed her under arrest. The officer also testified as follows:

"Q. And you put the handcuffs on her and told her she was under arrest? A. I did.

"Q. And did you at that time demand the key to the apartment? A. From her?

"Q. Yes. A. Yes, sir.

"Q. *She asked you if you had a warrant?* A. *Yes, sir.*

"Q. *And that she would not let you in unless you had a warrant; is that correct?* A. *That is correct.*

"Q. What did you do after that when she refused to let you into the apartment? A. I told her that if she refused to open the door to her apartment that we would only secure the key from the manager.

"Q. And did you go to the manager? A. My partner did, sir.

"Q. And you or your partner opened the door and you went inside? A. I don't recall whether it was myself or my partner. One of us did; yes, sir.

"Q. *But all this time the defendant was demanding that you show a warrant before going into the apartment; is that correct?* A. *Yes, sir.*" (Emphasis added.)

Sworn as a witness in her own behalf, defendant denied knowledge of the presence of the marihuana seeds on the bedspread and denied that she showed the officers any marihuana concealed in a slipper, denying all knowledge of its presence in her apartment.

Don William Andre who was with defendant at the time of her arrest corroborated her testimony concerning her demands that the officers show her a warrant and of their refusal to do so.

Defendant's estranged husband Joseph Hamilton Dillard testified that on the night here in question he visited her at her apartment and that, "I had a big argument and fight with her about 8:30. I came over there to borrow a few dollars and she was going out to dinner with some friends, so she wouldn't give me the money, and I yanked the purse out of her hand and everything, and she ended up giving me a couple of dollars—in fact, she ended up giving me about $5 and the landlord came up and broke the scene up and—you want me to go on with the whole story?" Then the following ensued:

"Q. No. I wanted to know what time it was when you came back the second time. A. The second time—well, she went downtown and I was pretty juiced up. I am not an alcoholic——

"Q. But you were under the influence, you think? A. Yes.

"Q. What did you do while she was downtown? A. Well, I used to work on Main Street for a year and a half down there at the Tip Top. I know a lot of people down there. So I went down there and I kept on staggering around until I ran into somebody and purchased some marijuana and then I went and planted it.

"Q. What do you mean you planted it? A. Well, I went back through the window—I had been through that window a couple of times before. It's covered and pull the curtains down like that and I went in and spread a little bit around and then just took the rest and put it in a container and shoved it into one of her shoes. I did that with the pure intentions, believe me, of just getting her to go back to me. She said,

'You are goofing off too much and when you straighten out, okay.' And I got drunk—stone drunk—and I did it.

"Q. Did you later go to the Police Department to tell them? A. I certainly did.

"Q. When was that? A. That was after the preliminary. I couldn't know she was going to get into all this trouble over that. I came back to recuperate all the stuff and to see if she had made up her mind and she wasn't there, and so I just went downtown—after I saw what happened on the preliminary, I went and told Officer O'Grady and Mr. Jones that I wanted to confess, that I done it, and that I was sorry, and I was slightly intoxicated.

"Q. How many times did you go to the Police Department to tell them? A. That was the first time. They said, 'Fine, we can't accept it,' and they took me by the hand and gave me a merry heigh-ho and said, 'Come back tomorrow with Carolyn.' So I came back with Carolyn and her mother and the landlord and that displeased them completely so they yanked us out in the car—they put us out in the hall and they wouldn't let the witnesses talk and they had three officers and he says to me, 'Well, we are not going to accept your testimony,' and he says, 'Shut your mouth or I'll shove you through the wall.'

"Q. Which officer told you that? A. That was Officer O'Grady and he grabbed my arm and shoved me down and he says they can't accept my confession."

 As her first ground for reversal appellant urges that the entry of the officers into her apartment during her absence was in violation of her constitutional rights and that the evidence produced against her was obtained through an illegal search and seizure. In this regard, as heretofore set forth, when the officers arrived at appellant's apartment they knocked on the door several times and receiving no response they approached the manager who in response to their request opened the door for them. When they entered they discovered the marihuana seeds on the bed. Appellant does not contend that the manager had no authority to enter the apartment, and the manager testified that he voluntarily permitted the officers to enter. On the occasion of the first visit of the officers to appellant's apartment, there was no search. The contraband was plainly visible when the officers entered. The situation here presented is analogous to that existing in *People* v. *Ambrose*, 155 Cal.App.2d 513, wherein we said, at page 523 [318 P.2d 181] : "The officers asked the hotel manager for authority

to enter the room whereupon he opened the door and let them in. The question of consent is to be determined by the trier of fact (citing cases). Upon the authority of *People* v. *Gorg*, 45 Cal.2d 776, 783 [291 P.2d 469], and *People* v. *Caritativo*, 46 Cal.2d 68, 73 [292 P.2d 513], we are persuaded that appellant's contention must be rejected. In the cited case it is held that where the officers have acted in good faith, with the consent of a homeowner or landlord in conducting a search, and the latter believed they had joint control over the premises, and the right to enter them, evidence so obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner or landlord's authority. (See also *People* v. *Silva*, 140 Cal.App.2d 791, 794-795 [295 P.2d 942].)

"In the case now engaging our attention, we therefore conclude that it was reasonable for the trier of facts to conclude that the hotel manager believed, as he testified at the trial, that he possessed the authority to give consent to the officers to enter appellant's room and that it was equally reasonable for the court to hold that the officers acted in good faith and with the belief that the manager possessed the authority asserted. Therefore, the objects found in appellant's room were admissible in evidence. (Citing cases.)" ▆ It is not every search or seizure that is prohibited by the Constitution. It is *unreasonable* searches and seizures that are denounced. ▆ In the case now engaging our attention, the police officers received information from a reliable confidential informant that appellant was using narcotics and had a quantity thereof in her possession. The officers were acquainted with appellant and knew she had previously been convicted upon a narcotics charge. Information previously given by this informant had proved reliable. The officers went to appellant's apartment. They knocked but received no answer. They observed that the wall fireplace was in use and reasoned that someone was in the house. Thereupon they went to the manager's apartment and asked him to admit them to appellant's apartment. The manager did so. When they entered the apartment with the manager, the officers found marihuana seeds on appellant's bed. The officers returned to the manager's apartment and waited for appellant. She returned approximately two hours later and was placed under arrest. A further search was conducted and an additional quantity of marihuana was discovered in the toe of a slipper in appellant's closet.

The case of *Trowbridge* v. *Superior Court*, 144 Cal.App.2d

13, 17, 19, 23 [300 P.2d 222], holds that an arrest is legal where the basis therefor consists of information supplied by a reliable confidential informant (see also *People* v. *Vice*, 147 Cal.App. 2d 269, 272 [305 P.2d 270] ; *People* v. *Gonzales*, 141 Cal.App. 2d 604, 606 [297 P.2d 50] ). Since the arresting officer need only convince the trial judge of the reliability of the informant (*People* v. *Dean*, 151 Cal.App.2d 165, 167 [311 P.2d 85] ; *Lorenzen* v. *Superior Court*, 150 Cal.App.2d 506, 510 [310 P. 2d 180] ), we are satisfied that the trial judge could reasonably find, on the basis of the testimony herein, that the arrest of appellant was made on reasonable cause and that the searches made precedent and subsequent to the arrest were lawful searches and seizures. An arrest may be made under certain circumstances without a warrant (Pen. Code, § 836), and a search may be lawful though it precedes a legal arrest (*People* v. *Vice, supra,* 273; *People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531] ).

Appellant urges that the prosecution failed to meet the burden of establishing justification for the search of appellant's home through reliance upon information obtained from a reliable and confidential informant in that '' (1) It made no showing as to where the officers received their information ; whether it was days, weeks or months before the search was made. (2) It made no showing as to the reliability of the informant, that is, on how many occasions had the officers received information relating to others previous to the information concerning appellant.'' In the instant case, Officer MacGregor did testify that the informer had provided accurate information in the past, that in his opinion the informer was a reliable source of information. Appellant herein made no attempt on cross-examination to elicit either the name of the informer, the number of previous cases in which the officer relied upon information furnished by this informer, nor the accuracy of such information. The only reference to an informer which appears in the cross-examination of the officer is as follows:

''Q. Now, wasn't it a fact, Officer MacGregor, that at that time that you first saw the defendant you told her that you had received the address from one Del Ray, a girl friend of hers—or a friend of hers? A. No, sir.

''Q. Did you mention anything about any woman giving you the address of the defendant? A. No, sir.''

Having failed to raise any of these issues at the trial, appellant cannot on appeal, present them for the first time. Ap-

pellant relies heavily upon the case of *People* v. *Carswell* * (Cal. App.), 328 P.2d 842. However, the Supreme Court has granted a hearing in that case.

Finally, appellant urges that she is entitled to a new trial because the court below neglected to rule upon her motion for a new trial within the statutory time specified in section 1202 of the Penal Code. Appellant asserts that on December 30, 1957, she made a motion for a new trial as reflected by the clerk's transcript which records that "A motion for a new trial is made." However, the reporter's transcript sets forth the proceedings of December 30, 1957, as follows:

"Mr. Durkee (appellant's counsel) : I would like to make an oral application for probation at this time and also for the purpose of preparing a motion for a new trial.

"The Court : Do you waive time for probation and sentence at this time?

"Mr. Durkee : We waive time for probation and sentence.

"The Court : All right. Probation and sentence will be January 24th at 9 :00 o'clock a. m. The defendant will remain on bail, and as I understand it, you are making a motion for a new trial at this time?

"Mr. Durkee : Well, I would like to make the motion——

"The Court : All right, you can make the motion and you can argue it at that time.

"Mr. Durkee : Thank you, your Honor."

At the proceedings which took place on January 24th, to which time the matter was continued as above indicated, appellant's counsel made no reference to any "motion." As shown by the reporter's transcript, the following occurred:

"The Court : Is arraignment for judgment and sentence waived?

"Mr. Durkee (counsel for appellant) : Yes, your honor.

"The Court : I have before me case No. 189104. Is there any legal cause why judgment should not now be pronounced and sentence imposed?

"Mr. Durkee : None, your honor."

Thereupon, appellant's counsel discussed the facts of the instant case and the previous case in which appellant had been placed on probation, and with a violation of the terms of which probation she was charged. Counsel then indicated his intention to file a notice of appeal and requested a reduction in the

---

*A hearing was granted by the Supreme Court on October 10, 1958. The final opinion of that court is reported in 51 Cal.2d 602 [335 P.2d 99].

amount of bail pending appeal. No mention whatever was made of any motion for a new trial.

 It is well established in this state that a motion for new trial in a criminal case is a statutory right and may be made only on the grounds enumerated in section 1181 of the Penal Code, exclusive of all others. (*People* v. *Amer*, 151 Cal. 303, 305, 306 [90 P. 698]; *People* v. *Boren*, 139 Cal. 210, 216 [72 P. 899]; *People* v. *Fry*, 137 Cal.App. 525, 529 [31 P.2d 204].) In the case at bar, appellant concedes ''that the grounds for said motion were not detailed.'' As was said in *People* v. *Ah Sam*, 41 Cal. 645, 650, 651, regarding a motion for a new trial, ''The attention of the Court must be called to it. The Court must be moved to grant the order.'' And, in the case of *People* v. *Beatcher*, 136 Cal.App. 337, 338, 339 [28 P.2d 943], wherein the record reflected that counsel for the accused said, ''At this time, may it please the Court, I desire on behalf of the defendant, and defendant does, to make oral motion for new trial, on all the statutory grounds, and I submit it without argument,'' whereupon the court announced, ''Motion denied,'' Mr. Presiding Justice Conrey in a concurring opinion made the cogent statement, ''I would not here contend that upon a motion for new trial thus presented, the court would have been without jurisdictional authority to grant that motion and order a new trial. But when the defendant appeals from an order denying such motion, it is incumbent upon him to show affirmatively that in the trial court's consideration of the motion and decision thereon there was some abuse of discretion. The bald statement to the trial court that the defendant made his motion for new trial 'on all the statutory grounds,' without argument and without suggestion of any definite reason for granting the motion, *did not fairly and reasonably call for decision upon any indicated question in the case*. Essentially, it failed to bring to the attention of the court any one reason˙why a new trial should be granted. The motion was just a general appeal to the world of legal possibilities. Although courts of appeal are created to review and correct errors of trial courts, the law intends (so I believe) that upon a motion for a new trial, the trial court shall be given an opportunity to consider and determine some definite question or claim on which the motion depends, before a court of appeal will be required to review an order denying the motion. In this case if, by critical examination of the complicated and very long record, it could be demonstrated that the evidence was not sufficient to prove that any crime was committed, the

facts relied upon, and the results to which they point, should have been brought to the attention of the court below." (Emphasis added.)

Under the facts present in the case now before us we are satisfied that the right of the appellant to move for a new trial was waived. There is nothing in the reporter's transcript on appeal in this case to show that appellant ever actually made a motion for new trial. During the proceedings of December 30, 1957, appellant's counsel spoke of "preparing a motion for a new trial," and in response to a statement by the court, ". . . and as I understand it, you are making a motion for a new trial at this time?" appellant's counsel replied, "Well, I would like to make the motion." Thereupon the court stated, "All right, you can make the motion and you can argue it at that time (January 24, 1958)." On January 24th, as heretofore pointed out, appellant's counsel made no mention of a motion for new trial. All that is here indicated is that counsel intended to make a motion for new trial, and at no time did he specify the grounds upon which he intended to or did rely. Even though it be conceded that appellant's counsel by his statements, gave notice of his intention to move for a new trial, there was in fact no motion made for a new trial on any grounds specified in section 1181 of the Penal Code, and the notice of motion is not sufficient to require the court to pass upon it (*People* v. *Rothrock*, 8 Cal.2d 21, 24 [63 P.2d 807]).

What we have just said answers appellant's contention ". . . that the moving party is entitled to a ruling merely by virtue of the making of the motion. Since the court has the *power* to grant such a motion when made 'on all statutory grounds,' it follows that it has the *power* to grant it where the defendant merely moves for a new trial."

While all of the grounds contained in the code section may be utilized, nevertheless, the motion must be actually made and the grounds upon which reliance is placed must be brought to the attention of the court. Such a rule we feel is supported by the general tenor of the cases cited by appellant herself. In *People* v. *Prudencio*, 93 Cal.App. 241, 246 [269 P. 698], it is simply held that an accused has a right to have his motion for new trial heard and determined by the trial judge when presented *in the manner* and within the time provided by law. In the case just cited it is manifest that the specific grounds for the motion were brought to the attention of the court. And, in *People* v. *Beatcher*, *supra*, also relied upon by

appellant, the defendant therein made the motion specifically "on all statutory grounds." Based on that case, appellant argues that if the court has the authority to grant a motion made "on all statutory grounds," it necessarily follows that it has power to grant it where the defendant merely moves for a new trial. However, the very concurring opinion in the case last cited and relied upon by appellant, from which we have hereinbefore quoted, holds that language much more specific than that used by appellant herein, "did not fairly and reasonably call for decision upon any indicated question in the case. . . ." Here, appellant's counsel merely spoke of "preparing for a motion," "I would like to make the motion," and on the date set by the court for making and presenting argument on the motion, appellant's counsel made no reference to a motion for new trial. We are satisfied that the court was entitled to conclude that no motion for new trial was made or pending before it.

For the foregoing reasons, the judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied March 24, 1959, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1959.