[Crim. No. 8115. Second Dist., Div. Three. Oct. 17, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. NASH ARMENTA JARAMILLO, Defendant and Appellant.

James O. Warner, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, and E. E. Clabaugh, Jr., Deputy District Attorney, for Plaintiff and Respondent.

FILES, J.—This is an appeal from a judgment whereby appellant was convicted of burglary and grand larceny. (Pen.

Code, §§ 459, 487.) The crimes involved four men. One of them, Martinez, pleaded guilty. The other three, Montanez, Baca, and appellant, pleaded not guilty and were tried together before a jury. All three were convicted. This appeal is on behalf of one only.

## Sufficiency of the Evidence

The record contains evidence of the following circumstances:

On the morning of May 17, 1961, Mr. and Mrs. Hawley left their home in Moorpark in Ventura County to go to Los Angeles. They returned about 7:30 p. m. to find that their residence had been entered, and a large quantity of clothes, glassware, silverware, liquor and other household items had been taken.

On this same day Baca, Martinez, Montanez and appellant, all of whom lived in Los Angeles County, drove to the Moorpark area in Baca's black 1957 Ford. The Ford was distinctively marked in that the words "mi negra" were painted on the right side and "mi negro" were painted on the left side. Martinez was appellant's half-brother, and Montanez was appellant's nephew. The four men were supplied with whisky, wine and beer, which they consumed as they drove. They had with them a 22-caliber pistol and a pellet gun. On one occasion they stopped to do some target shooting and hunt rabbits. At about 4:45 or 4:50 p. m. three witnesses saw the Ford parked in the middle of Sand Canyon Road about a mile from the Hawley home. Four "Mexican men" were standing near the car on this occasion. At about 6:20 p. m. two of these witnesses, on their way home from work, saw the same Ford standing in front of the Hawley home. One man was at the wheel then. About 6:30 p. m. these witnesses saw a black 1957 Ford go by, traveling fast, with a man in the back seat who seemed to be sitting on something. One of the witnesses became suspicious and notified Mr. Hawley's son-in-law, William Corley, who lived a quarter of a mile away. Mr. Corley went immediately to the Hawley residence and discovered that the front door was open and that clothes hangers and other articles from the house were spread across the front yard. Mr. Corley had driven past the Hawley home between 5 and 5:15 that day and had observed that the door was closed and no car was parked in front at that time.

Before dark that evening Baca, Martinez, Montanez and appellant arrived in Baca's Ford at the home of appellant's

sister, Louisa Hernandez, in Fillmore. (Sundown was at 7:52 p. m.) Appellant was driving. The things taken from the Hawley home were stacked high in the back seat. They stayed about half an hour. Martinez took a clock and a wine glass from the car and gave them to Louisa Hernandez' daughter Rosie. These were articles taken from the Hawley home.

One of the men became involved in a fight with a neighbor boy. Baca waved the pistol and someone called the police. This was a few minutes after 8:30. Before the police arrived the four men left in the Ford, with appellant driving. Thereafter Montanez and appellant separated from the other two. Shortly after 9 p. m. Baca and Martinez drove the Ford into a sheriff's roadblock in Fillmore and were captured. The goods taken from the Hawley home were recovered from the back seat and identified. A fingerprint examination disclosed that appellant's prints were on a tray, a broken wine glass, and an unopened bottle of whisky, all of which were identified as articles taken from the Hawley home. The tray was found about halfway down in the pile of clothing in the rear seat. The glass was found close to the floor level back of the front seat.

The People put into evidence a tape recording of a statement made by appellant shortly after his arrest. In that statement appellant admitted that during the afternoon he had been with the other three in Baca's Ford. He said that when they stopped to hunt rabbits, he and Baca had wandered off from the other two. When they returned to the road they found that Martinez and Montanez had taken the car. When the latter two returned, the car was loaded with the articles taken from the Hawley home. Martinez and Montanez had said that the articles belonged to Louisa Hernandez, and that she had asked them to transport the goods to Los Angeles.

Appellant did not testify at the trial. Neither did Montanez.

Martinez, who had pleaded guilty, testified that he and Montanez had committed the burglary while Baca and appellant were hunting. Baca also testified to the hunting alibi. The testimony of Martinez and Baca was impeached in several important respects, both by their own prior statements and by the testimony of other witnesses.

Under the evidence here, where appellant was in company with the burglars just before the crime, and was with the group immediately afterwards, in fact driving the

car which carried the loot, and where his fingerprints were found on stolen articles buried in the back seat, the evidence is sufficient to support the inference that appellant was a participant in the burglary and the larceny. The jury certainly was not required to believe the discredited testimony of the defendant Baca, who was trying to exculpate himself, nor the testimony of appellant's brother, Martinez, who had pleaded guilty and had little to lose by trying to save appellant.

Since the record contains substantial evidence of guilt, the weight of the evidence and the credibility of the witnesses were matters to be determined in the trial court, and the verdict of the jury as to such matters is binding on this appellate court. (See *People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].)

### *Misconduct by the District Attorney*

Appellant complains of the tactics of the district attorney in cross-examining the defense witnesses. Some of the questions were argumentative and should not have been tolerated. No objection was made at the trial and no admonition to the jury was requested. This court cannot say, from a reading of the record, that the error complained of has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½.)

### *The Motion for New Trial*

On August 29, 1961, appellant was arraigned for sentence. He was in court with the attorney who had represented him at the trial, Mr. Boyes. No motion for a new trial had been made. After the court asked whether there was any legal cause why judgment should not be pronounced, the record is as follows: "MR. BOYES: No legal cause, your Honor. THE COURT: There is none. If there were, I would give you the benefit of it. It is the judgment of this Court that you be committed to the Adult Authority of the State of California to serve the sentence prescribed by law for both of these offenses, that the sentences and each of them run concurrently and not consecutively. It is the judgment and sentence of this Court that you be delivered to the Director of Corrections at Chino, California, that you serve the sentence prescribed by law. I hope you will do your time easily. DEFENDANT JARAMILLO: Your Honor, if there is any possible way I can make a motion for a new trial? THE COURT: Sure, you can make a motion. You have got an absolute right to make a

motion. It must be in writing and you make one out before they send you and file it here and that will lay the foundation for an appeal.''

Counsel for appellant requested a stay of execution for a week so that appellant might prepare a motion for a new trial and an appeal. The court explained that this week's delay would be ''dead time,'' but appellant said that wouldn't make any difference to him. The stay of execution for one week was granted.

On September 6, 1961, a six-page handwritten motion for new trial, with citation of authorities, signed by appellant, was filed with the clerk. On September 7 appellant again appeared in court with his counsel, Mr. Boyes. Counsel handed to the court a formal substitution of attorneys, signed by appellant, substituting himself in propria persona. The court inquired of appellant if this was his wish, and appellant answered, ''Yes.'' Then the following occurred: ''THE COURT: And you presently have a motion for new trial. Do you want to argue it? DEFENDANT JARAMILLO: Well, I don't know. I am not guilty of what I am charged with that I was found guilty—— THE COURT: Well, on the motion for new trial: I heard the testimony and I know all about it. I have no authority to grant the motion for a new trial. That is simply one of the proceedings in perfecting your appeal. So the motion for a new trial is denied.''

 Penal Code, section 1182, provides that the application for a new trial must be made before judgment. The motion must be made orally. The grounds relied upon must be specified. Otherwise the right to make the motion is waived. (*People* v. *Dillard,* 168 Cal.App.2d 158, 167 [335 P.2d 702]; *People* v. *Skoff,* 131 Cal.App. 235, 239 [21 P.2d 118]; *People* v. *Fry,* 137 Cal.App. 525, 529 [31 P.2d 204].)

 The code does not empower the court to grant a motion for new trial after judgment. (See *People* v. *Fry, supra,* 137 Cal.App. at p. 530.)

The motion for a new trial may be an important safeguard to a defendant in a case involving a conflict in the evidence. Where the motion is made on the ground that the verdict is contrary to the evidence (Pen. Code, § 1181, subd. 6), it becomes the duty of the trial judge to determine whether, in his opinion, there is sufficient credible evidence to support the verdict. In performing this function the trial judge (unlike an appellate court) has a broad discretion and is not bound by conflicts in the evidence. (See *People* v. *Robarge,*

41 Cal.2d 628, 633 [262 P.2d 14].) Thus in waiving the right to make a motion for a new trial, a defendant passes up an opportunity for a kind of review which cannot be obtained at any other stage of the proceedings, in either the trial or appellate courts.

In this case it appears that, at the time sentence was pronounced, appellant expressed his desire to make a motion for a new trial and the judge expressed willingness to give him a week's time within which to prepare. The fact that judgment had been pronounced orally was not a bar because the judgment would not be effective until entered by the clerk. Thus when appellant spoke up promptly, as he did, the trial court could have vacated the judgment prior to its entry. (*People* v. *McAllister*, 15 Cal.2d 519 [102 P.2d 1072].) The trial court's failure to take that step was apparently an inadvertence, for the colloquy between appellant and the court on August 29 indicates a mutual intention that the motion would be prepared, made, and ruled upon a week hence.

When appellant came back into court on September 7 with his motion prepared, it was too late because the judgment had been entered. The court was then obliged to inform appellant that ''I have no authority.'' It appears that appellant has been deprived of a substantial right because of the inadvertent failure of the trial court to vacate the judgment prior to entry, so as to keep alive his power to rule upon the motion which he apparently intended to hear upon its merits. Justice requires that the judgment be vacated with directions to hear and determine the motion for a new trial. (See *People* v. *Robarge*, 41 Cal.2d 628, 635 [262 P.2d 14].)

Appellant has argued that he is entitled to a new trial under Penal Code, section 1202, which (prior to the 1961 amendment) read: ''If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion within the time fixed for pronouncing judgment, or within the time to which the same is continued under the provisions of section eleven hundred and ninety-one of this code then the defendant shall be entitled to a new trial.''

This section does not apply here. Appellant was regularly sentenced on August 29, 1961. No motion for new trial was made or pending on that day, either before or after the pronouncement of sentence. A statement that a party intends to make a motion in the future, but without indicating any

grounds, is not sufficient to require judicial action. (*People v. Dillard,* 168 Cal.App.2d 158, 167 [335 P.2d 702].) The record is clear that on August 29 neither appellant nor his counsel was prepared to make the motion. Under the authorities cited above, the right to make the motion was waived when counsel stated that no legal cause existed, and the court thereupon pronounced sentence. The court committed no error in this respect. It was afterwards—when the trial court expressed willingness to relieve appellant of this waiver, but failed to take the procedural step which was indispensable to make such relief effective—that an error occurred which entitles appellant to relief in this court.

### Withdrawal of Counsel

 Appellant argues that his constitutional rights were infringed on September 7, 1961, when the court allowed him to discharge his attorney and substitute himself in propria persona without first ascertaining that the waiver of the right to counsel was both intelligent and voluntary. The point is moot because it now appears that the proceedings which occurred in the trial court after the withdrawal of counsel had no legal effect. The record shows that the trial judge was most careful to see that appellant's right to appeal was preserved. The court ascertained that a notice of appeal had been prepared by the withdrawing attorney, and that the notice was filed before the appellant left the courtroom on September 7.

We assume that when further proceedings occur in the superior court after remand, that court, mindful of *In re Turrieta,* 54 Cal.2d 816 [8 Cal.Rptr. 737, 356 P.2d 681], will see that appellant is then represented by counsel unless there is a voluntary and intelligent waiver at that time.

### Double Punishment

 Penal Code, section 654, provides that ''an act or omission'' may not be punished under more than one provision of the code. As this section was construed by the Supreme Court in *Neal v. State of California,* 55 Cal.2d 11, 19 [9 Cal. Rptr. 607, 357 P.2d 839] : ''If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.''

 Where a person enters a house to commit theft, and does commit theft, he may be guilty of both burglary and larceny, but under the ''one objective'' test he may be punished for only one offense. The judgment here is erroneous

in that appellant was sentenced both for burglary and for grand theft. (*People* v. *Collins,* 203 Cal.App.2d 611 [21 Cal.Rptr. 783] ; *People* v. *Dykes,* 198 Cal.App.2d 75, 81 [17 Cal.Rptr. 564].) The two sentences cannot stand even though they are made to run concurrently. (*People* v. *Kehoe,* 33 Cal.2d 711, 716 [204 P.2d 321] ; *People* v. *Branch,* 119 Cal. App.2d 490, 496 [260 P.2d 27].)

The judgment is vacated and the action is remanded to the superior court with directions to hear and determine appellant's motion for a new trial, and, if such motion be denied, to pronounce such judgment as is proper.

Shinn, P. J., and Ford, J., concurred.