[Crim. No. 8882.    Second Dist., Div. Two.    Aug. 20, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. CLARENCE BLANKS, JR., Defendant and Appellant.

Morton Gantman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was charged in count I of an information with the robbery of Melvin Mays, and in count II with assaulting Mays by means of force likely to produce great bodily injury. He pleaded not guilty to the charges. Following a jury trial he was found guilty of robbery as alleged in count I, the jury determining it to be robbery in the second degree. He was also found guilty of the aggravated assault charged in count II. Defendant moved for a new trial and the motion was denied. The court then reduced the offense under count I to grand theft from the person, a lesser but necessarily included offense. Probation was denied and defendant was sentenced to one year in the county jail on each count, the sentences to run consecutively. He appeals from the judgment.

The victim of the robbery and assault, Melvin Mays, testified that at about 1:30 a. m., on August 25, 1962, he left a bar known as the "Club Chucaire" in Los Angeles. After walking a short distance he heard someone say, "That's the one," and he was then attacked by four or five men. During the scuffle which ensued Mays' wallet, containing two or three dollars, was taken from him. Mays became unconscious when he was kicked in the head, but he recalled hearing someone say, "Get his ring." His ring was not stolen, however. He was later taken to the hospital where he was treated for his injuries. At the trial he exhibited scars on his head and face, and also two 5-inch scars on his back which he sustained as a result of the attack.

An eyewitness to the incident was one Aredas R. Bell, who was sitting with some friends in a car across the street from the Club Chucaire. He observed what at first appeared to be a fight between two men, and then four or five men attacking Mays. He heard one of the men say, "Get his ring." A woman came out of a nearby house holding a gun and said, "My God, don't kill the man," and scared the attackers away. Defendant, however, "came back and stomped" Mays two or three times in the face with both feet. At this point Bell and his friends left their car and approached Mays, inquiring if he was hurt. They then decided to apprehend the attackers. Bell saw defendant and said, "There he is." De-

fendant began running away but was caught by some of Bell's companions who returned him to the scene.

Gerald Campbell, one of the investigating officers, testified that he questioned defendant about the incident and that defendant freely and voluntarily confessed. During the questioning Officer Campbell made notes of defendant's statements on the back of the case envelope which contained the arrest and crime report. He used these notes at the trial to refresh his memory as to defendant's confession, which was as follows: ''Dusty [defendant's codefendant] and I and two other guys were in the bar. We saw the guy asleep in the bar and decided to take him. We followed him outside. I stood up in front of him and the other guys jumped him. Homeboy brought the wallet over, and we saw that there was no money in it. Then Dusty called for help, and I ran over and kicked the guy. Then some guys started chasing me and I ran to 40th and Broadway. I didn't get any money. When I saw that he didn't have any money, I said 'Somebody get his ring.' It was some kind of a birthstone ring. None of the money that I had on me came from the guy that we took.''

Defendant testified in his own behalf and denied any participation in the crime. According to his story he went to the Club Chucaire at about 6 p. m. on the evening in question, and, although he left ''numerous times,'' he remained there for the most part until 2 a. m., when the bar closed. When he left the bar he went across the street, entered a restaurant for two or three minutes, then walked out and down the street. It was at this time that he saw Bell and his companions. Defendant began running when they started toward him but they caught up with him in a car, beat him up, and accused him of robbing Mays. Defendant denied having confessed his guilt to Officer Campbell.

. Defendant raises a number of contentions on this appeal, all of which we have determined to be entirely without merit. We shall consider these points in the order in which they are presented in the brief submitted by defendant's appointed counsel.

■ It is first argued that there was insufficient evidence to sustain defendant's conviction on either count. With regard to count I, he emphasizes the fact that neither Mays nor Bell identified him as the particular assailant who removed the wallet from Mays' pocket. The statements of Mays and Bell, however, taken in conjunction with defendant's confession, clearly supply sufficient evidence from which the trial

court could conclude that defendant had at least aided and abetted in the crime of grand theft from the person. Having done so, he is equally guilty with the person who actually took the wallet out of Mays' pocket. (Pen. Code, §§ 31, 971; *People* v. *Ortiz*, 208 Cal.App.2d 572, 581 [25 Cal.Rptr. 327].) No citation of authority is required for the proposition that it is solely the province of the trial court to draw such inferences from the evidence before it.

█ As to the conviction for aggravated assault as charged in count II defendant suggests that Bell's testimony was inherently improbable. He argues that because the lighting in the area was poor Bell could not possibly have identified defendant from across the street as the man who returned and "stomped" Mays. With reference to this argument it is sufficient to say that a reading of Bell's testimony discloses no inherent improbability. His credibility was a question for the trial court to decide.

█ Defendant next contends that it was prejudicial error for the trial court to sustain objections to certain questions asked by defense counsel during the cross-examination of Officer Campbell. The questions related to whether or not the officer had available to him recording devices or a reporter at the time he made the notes of defendant's oral confession. Objections on the ground that the answers were irrelevant were sustained. No issue is raised concerning the admissibility of Officer Campbell's testimony as to this confession.[1] (*People* v. *Fitzgerald*, 56 Cal.2d 855, 860 [17 Cal.Rptr. 129,

---

[1]Although the question has not been presented on this appeal, it is appropriate to note the distinction between the facts of the instant case and those in the recent decision in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. In *Escobedo*, a suspect in a murder case was brought in for questioning and he was told that another suspect had named him as the murderer. The suspect's immediate and repeated requests to see his retained counsel were refused by the police, although his lawyer was present at police headquarters at the time, seeking in vain to consult with his client. In addition, there was affirmative evidence that the suspect was not advised of his constitutional right to remain silent. Under these circumstances the United States Supreme Court held that the suspect had been denied his right to counsel and that as a result the confession he gave during his interrogation was not admissible at his trial. In the instant case, however, there is nothing to indicate that defendant, either prior to or at the time of his confession, expressed any desire to see an attorney concerning his statements. Moreover, it is not claimed that he was unaware of his right to remain silent. We are not confronted, therefore, by the issue that was before the court in *Escobedo*.

366 P.2d 481].) It is defendant's position, however, that the information sought by his trial counsel was relevant to a determination of whether or not a confession had actually been made to Officer Campbell. He asserts that the fact that the officer "did not utilize these means would be a circumstance suggesting that the confession was in fact never given." We do not agree. Even if we were to assume, however, that this assertion contained more than mere speculation, the trial court's ruling clearly could not have prejudiced defendant. The jury knew that the only evidence of the confession was Officer Campbell's testimony. They were made fully aware that the notes used by the officer to refresh his memory had not been signed by defendant, nor ever shown to him. It was also brought out during the officer's testimony that he did not use a recording device or reporter at the time of the confession. In short, this was purely a case of choosing whether to believe Officer Campbell's testimony or defendant's denial that he had made the confession. The jury elected to accept the officer's version. Under the facts and circumstances of this case it does not appear that the result would have been different had the trial court's ruling allowed in the information sought by defense counsel. (Cal. Const., art. VI, § 4½.)

■ Finally, defendant argues that the court erred in sentencing him to two consecutive terms in the County Jail. He relies on Penal Code section 654, which proscribes double punishment for a single act or indivisible transaction that is punishable under more than one statute. Under the facts of the instant case, however, there is no violation of this section. It is abundantly clear from the evidence adduced at the trial that the assault charged in count II was separate and distinct from the crime for which he was convicted under count I. The theft from Mays having been completed, defendant returned to the scene and "stomped" the victim. This attack was entirely unrelated to the theft. Therefore, since this assault was not a part of the transaction constituting the crime of grand theft from the person under count I, it was punishable as a separate offense. (*In re Chapman*, 43 Cal.2d 385 [273 P.2d 817].)

Numerous other assignments of error contained in a brief filed by defendant in *propria persona* before counsel was appointed to represent him do not merit any discussion.

The judgment is affirmed.

Herndon, J., and Roth, J., concurred.