[Crim. No. 11215.    Second Dist., Div. Two.    Sept. 7, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. VIRGIL LEE WILLIAMS, Defendant and Appellant.

Jay Plotkin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Appellant was found guilty of first degree robbery and assault with a deadly weapon. He was sentenced to state prison on both counts, the sentences to run consecutively. ▉ The sole issue presented on this appeal is whether or not these consecutive sentences constitute double punishment in violation of the provision of section 654 of the Penal Code that ''An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . .''

We have concluded that the controlling precedents vindicate the judgment of the trial court and its implied finding that appellant's course of criminal conduct was divisible.

On the morning of July 7, 1964, appellant entered a hardware store armed with a .410 gauge shotgun. He ordered two customers to lie face down on the floor. He then commanded the owner of the store to put the money from the cash register and from his wallet into a paper sack. The essential features of appellant's course of criminal conduct are graphically portrayed by the following testimony of the store owner:

''Q. What did you do then? A. I didn't do anything until he told me to get a paper sack and give him the money out of the cash register. Q. Did you do that? A. I did. Q. That was because of the gun? A. Yes. Q. Were you in fear of the gun? A. Yes. Q. Did you put all the money into the bag? A. I did. Q. Currency and coin? A. I did. Q. Was there anything said about the coin? A. I first took the bills, and then he said give me the coins too. Q. How much money was in there? A. Approximately $75. Q. What happened after you got all the money in the bag? A. Then he asked me to give him the money out of my wallet, which I took my money out and I put the money in the bag. Q. Then what happened? A. Then he asked me where the floor safe was, and I told him I didn't have any.

Q. How far away from you was he during this episode about getting the money? A. Approximately four feet. Q. Facing you? A. Yes. Q. Were you able to see his eyes through the sunglasses? A. I don't remember. I was staring at him all the time I was giving him the money. Q. Then what happened after you told him you didn't have a floor safe? A. I stepped back to the end of the cash register where there is a key machine. The next thing I knew the gun went off. Q. What happened to the bag of money? A. I handed the bag of money to him on the counter first. Q. That was before you stepped back? A. That is right. Q. Did he take it? A. Yes. Q. Then you heard the gun go off after you stepped back? A. That is right.''

The owner was struck in the right arm by this gunshot and was hospitalized with a serious and crippling injury. *The determinative question, as we have indicated, is whether the record provides adequate justification for the trial court's finding that appellant's course of criminal conduct was a divisible transaction in that the second of the two crimes which he committed involved a subsequent, separate and differently motivated act.*

Our Supreme Court's most recent statement of the law on this subject is to be found in *People* v. *Ford,* 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132]. In that case the appellant had been convicted of murder and six other felonies including a robbery and a kidnaping in both of which the victim was one John Roope. The applicability of the law therein declared will appear from the following quotation from the decision (pp. 47-49):

''Defendant asserts that the sentences constitute double punishment in violation of Penal Code section 654. He argues that he cannot be punished for both the kidnaping and robbery of Roope because they were part of a continuous and nondivisible transaction. . . .

''Whether defendant's course of criminal conduct in robbing and kidnaping Roope is divisible and therefore gives rise to more than one act within the meaning of section 654 depends upon his intent and the determination whether he committed both offenses incident to one objective. (*Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Jaramillo,* 208 Cal.App.2d 620, 628 [25 Cal. Rptr. 403].)

''The case of *In re Chapman,* 43 Cal.2d 385 [273 P.2d 817], presents a factual situation approximating the facts in the instant case with respect to the question of divisible acts. In

*Chapman* the defendant committed a robbery while armed with a deadly weapon with which he menaced the victim and obtained from him a sum of money through thus placing him in fear; after the victim had produced the money, he attempted to escape. Defendant's accomplice tackled him and the defendant then assaulted him with the weapon. It was held that the assault was not a means of perpetrating the robbery but a separate act that followed after the robbery was completed, and that therefore the defendant was guilty of two punishable acts.[1] Similarly, in the case now before us the kidnaping was not a means of perpetrating the robbery and was also preceded in time by the robbery. On this theory the trial court did not violate the proscription of section 654 against multiple punishment of a single act because the robbery and kidnaping convictions were predicated upon separate acts.

"The instant case is conspicuously different in one crucial respect from the cases in which appellants have successfully raised the issue of double punishment based upon multiple convictions involving robbery and kidnaping. [Citations.] In those cases, unlike the present case, the defendant was charged with both kidnaping for the purpose of robbery (Pen. Code, § 209) and robbery, and in each case the kidnaping preceded and was the means of accomplishing the robbery. (See *People* v. *Brown,* 29 Cal.2d 555, 558 [176 P.2d 929].) The offense of robbery, of course, is necessarily included within the offense of kidnaping for the purpose of robbery where the kidnaper achieves his purpose. In the present case, as we have seen, the robbery which occurred at Roope's house was completed *before* defendant commenced the acts relied upon as establishing the kidnaping; and neither robbery nor simple kidnaping (Pen. Code, § 207), the crimes with which defendant was charged and convicted, is an offense necessarily included within the other."

The factual situation in *People* v. *Houghton,* 212 Cal.App. 2d 864 [28 Cal.Rptr. 351] (hearing denied), is very similar to that presented in the case at bench. In *Houghton,* the defendant was found guilty of the crimes of robbery and assault with

---

[1]Footnote 4 to the above quoted text reads as follows: "Compare *People* v. *Logan,* 41 Cal.2d 279 [260 P.2d 20], and *People* v. *Allen,* 220 Cal.App.2d 796 [34 Cal.Rptr. 106], in which, for the purpose of committing robberies, assaults were committed first, and it was held that under section 654 the defendants could not be punished for both the assault and the robbery."

intent to commit murder. It appeared that after money had been taken from a service station attendant, he was ordered to face the wall of the restroom. The defendant Houghton then shot the attendant in the back.

In rejecting the claim of double punishment, the appellate court declared (p. 873): "We are not convinced here, however, that the acts were indivisible. The robbery had been accomplished prior to the assault, the facts showing there was a threat of force (by use of a gun) sufficient to put the victim in fear; he was put in fear and the robbery was thereby accomplished. *The circumstances were such that the shooting could have been an afterthought.*" (Italics added.)

Likewise in the case at bench, appellant had accomplished the objective of his robbery when, after forcing the three men into the store at gun point, he had demanded and received all the money from the cash register and from the store owner's wallet. Thereafter he asked about the location of the floor safe. After the store owner informed him that there was no floor safe, appellant blasted his victim at point-blank range with a .410 gauge shotgun. Certainly it is reasonable to infer that this subsequent act constituting the second needless crime was an impulsive afterthought motivated by a malicious or vengeful desire to injure, maim or kill.

As stated in *Neal* v. *State of California,* 55 Cal.2d 11, at page 20 [9 Cal.Rptr. 607, 357 P.2d 839]: "In *In re Chapman,* 43 Cal.2d 385, 387 [273 P.2d 817], however, we held that when the assault is not a means of perpetrating the robbery but is an act that follows after the robbery is completed the defendant is guilty of two punishable acts." In our opinion the decisions in *Chapman,* in *People* v. *Houghton, supra,* 212 Cal. App.2d 864, and in *People* v. *Blanks,* 229 Cal.App.2d 310 [40 Cal.Rptr. 223], are precedents which argue strongly in favor of affirmance herein.

By its discussion of *In re Chapman,* the decision in *Neal* reaffirms the previously established rule that if the question of the divisibility of the transaction and the question whether the several offenses were incident to more than one objective are essentially factual, then the findings of the trier of the facts will not be disturbed. It was pointed out that *Neal,* unlike *Chapman,* was a case in which the nature of the uncontradicted evidence was such that there could be no supportable finding of divisibility.

As was recently stated in *People* v. *Ridley,* 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124]: "[T]he purpose of the protection against multiple punishment is to insure that the

defendant's punishment will be commensurate with his criminal liability. . . ." And as we pointed out in *People* v. *Reed,* 241 Cal.App.2d 102, 107 [50 Cal.Rptr. 300]:

"[R]ecent decisions follow a rationale embracing the time-honored doctrine that the law should seek 'to make the punishment fit the crime.' Consistent with that rationale, they indicate that a defendant who commits two crimes in pursuit of two different objectives compounds his culpability and deserves more severe punishment."

This approach to the problem is realistic, consistent with the dictates of both justice and common sense. An armed robber who needlessly and viciously maims and endangers the life of his victim, even after he has consummated the purpose of his original crime, certainly deserves more severe punishment than one who limits his criminal activity to the unlawful taking of the property of another.

In the circumstances of the present case, it would be quite inappropriate for this court to hold *as a matter of law,* and contrary to the implied findings of the trial court, that appellant's course of criminal conduct was an indivisible transaction. Application of the prescribed test of motivation necessarily involves a process of fact finding which properly lies within the province of the trial court.

The judgment is affirmed.

Fleming, J., concurred.

ROTH, P. J., Dissenting.—The majority in *Neal* v. *State of California,* 55 Cal.2d 11, at p. 19 [9 Cal.Rptr. 607, 357 P.2d 839], holds: "Few if any crimes, however, are the result of a single physical act. 'Section 654 has been applied not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' (*People* v. *Brown, supra,* 591.)"

The cases which follow *Neal* including *People* v. *Ford,* 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132], cited by the majority, reiterate that ". . . the meaning of section 654 depends upon his [defendant's] intent and the determination whether he committed both offenses incident to one objective." (*People* v. *Ford, supra,* p. 48.)

It appears, therefore, that when a course of criminal

conduct gives rise to multiple crimes, the only question of fact to be determined by the trial court is whether the ". . . intent and the determination . . ." of a defendant who commits more than one offense in the perpetration of a crime, such as robbery, was embarked upon a course of criminal conduct ". . . incident to one objective. . . ."

In every comparable case in which a trial court by its judgment imposes sentence for more than one crime, it has impliedly found that the criminal has consummated his "one objective" and committed an additional crime or crimes and that, therefore, section 654 of the Penal Code is not applicable.

All of the cases, including *Neal,* wherein a defendant was convicted and punished for more than one crime in the trial court, dealt with situations which necessarily involved an implied finding by the trial court that the crimes were divisible from the one objective. In *Neal,* however, the court nevertheless ignores such implied finding and holds that punishment must be confined to the crime which was the criminal's "one objective." It seems, therefore, that in spite of a trial court's finding that the application of section 654 becomes a question of law, specifically, I presume, the question is whether the implied finding of divisibility is supported by the evidence.

The cases cited by the majority, with the possible exception of *Houghton,* were clearly divisible on the facts. On the naked facts the distinction between *Houghton* and the case at bench is, I concede, sensitive, but when sound inferences are added to the evidence in *Houghton,* the distinction, I think is solid. In *Houghton,* the victim was told to turn his back to "move up a little higher . . ." and reassured he would not be harmed. He was then shot. This additional evidence tends to prove a subjective calculated intent to commit a separate crime on the assumption that the robbery having been consummated, the criminal decided to do away with the only witness to his crime.

The facts at bench show one continuous sequence of action. They affirmatively show the robbery had not been completed. Appellant had made a demand for the whereabouts of the floor safe, showing that his "one objective" was to rob the hardware store by obtaining money from the cash register, the owner's wallet, the floor safe and from any other source. His single objective was to obtain all the money available. Further, appellant had not extricated himself from the robbery. (*Peo-*

*ple* v. *Kendrick,* 56 Cal.2d 71, 90 [14 Cal.Rptr. 13, 363 P.2d 13]; *People* v. *Beghtel,* 164 Cal.App.2d 294, 297 [330 P.2d 444].)[1]

Any robbery is an assault, and an armed robbery is always an assault with a deadly weapon irrespective of whether a weapon is discharged accidentally or because the victim attempted to interfere with the progress of the criminal act or with the ''get away'' of the robber. Since the victim in this case did pursue the robber even though shot in the arm, either of the latter two inferences are anything but illusory. In short, in the case at bench, there is no extra evidence other than the discharge of a gun to support a finding of divisibility.

I think, too, that there is no societal advantage in imposing an additional felony sentence for a separate felony which is predicated on an implied finding, illusory and vague, of a separate, calculated and objective criminal intent to commit an assault divisible from the robbery. If the victim in the case at bench were a highly sensitive person, robbed at gunpoint, and the weapon had not been discharged or discharged in the air, it is not improbable that the mental, physical and emotional trauma suffered by the victim as a result of the experience, would cause actual physical, emotional and general psychiatric damage, infinitely more severe in its consequences than the gunshot wound inflicted upon the victim in the case at bench. In the assumed situation there could be no question but that there was a single crime committed, to wit: robbery, and there would be more reason for the application of the principle that the punishment should fit the crime, than in the case at bench.

I have difficulty in the absence of evidence other than the discharge of a gun in the perpetration of an armed robbery, in reconciling the mandate of section 654, as it has been specifically applied by our Supreme Court, with the vague and illusory distinctions between the implied finding that criminal intent is inherent in respect of the perpetration of any and every crime and the finding here separately made by the trial court, approved by the majority, of a subjective, calculated

---

[1] The court says in *Beghtel,* at p. 297: ''As stated in *People* v. *Raucho,* 8 Cal.App.2d 655, 664 [47 P.2d 1108], '. . . the perpetration of a robbery is not completed the moment the stolen property is in the possession of the robbers. Robbery, a combination of the crime of assault with that of larceny, includes, as does larceny, the element of asportation, and this taking away is a transaction which continues as the perpetrators depart from the place where the property was seized.' ''

intent within appellant to commit an assault with a deadly weapon, as no part of his one objective, to commit a robbery.

I would vacate the judgment as to count one.

Appellant's petition for a hearing by the Supreme Court was denied November 2, 1966.