[Crim. No. 12725.   Second Dist., Div. One.   Aug. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SALVADOR SANCHEZ SAINZ, Defendant and Appellant.

Joseph Amato, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was found guilty of assault with a deadly weapon (§ 245, Pen. Code) ; he appeals from the judgment of conviction.

On December 4, 1965, James Kidder drove into a drivein with four passengers; they were about to leave the car when a beer bottle struck the rear and another car about 20 feet away started up the road. Defendant, one of the passengers of the latter, pulled his hand back into the car. Kidder drove up and blocked the car; he walked over to the driver's side of the other vehicle and asked why he threw the beer bottle at his car. Kidder and defendant had words, then Kidder was cut along the left eyelid and down the side of his face through the nose; he saw a broken bottle about 6 to 10 inches away from his face being held by defendant with his arm extended straight in front of him. Defendant said nothing to Kidder just before he struck him with the bottle. After striking him, defendant said if he wanted some more to come on. Kidder had no weapon or anything in his hand at the time, nor did he have any weapon when he first approached the car and spoke to the driver; none of the passengers in Kidder's car had any weapons or anything in his hand. Kidder started walking back across the street but defendant kept pushing the beer bottle toward his face and kept coming at Kidder; when Kidder got across the street defendant turned to Walt, one of Kidder's passengers, and asked if he wanted any trouble. Kidder and Walt drove around the corner where they hailed a police car. Kidder was taken to the hospital where he received between 40 and 48 stiches in his face.

Walt, who was with Kidder at the time of the assault, heard a bottle break, turned around and saw defendant stand up. Defendant came around from the other side of the car, approached Kidder on his blind side and sliced him up. Walt tried to disarm defendant but defendant pointed the broken beer bottle at him and threatened him; no one hit defendant or threatened him with any type of weapon before defendant came around from the other side of the car.

After receiving information about the altercation and the car's license number, Officer Aldrich made a check of the address of the owner of the car; when he reached there he saw the vehicle parked alongside a house on King Court in the driveway, and another, a 1955 Buick, on the street; in the Buick was defendant, Aparicio and Enciso. Defendant left the Buick and disappeared. The officer then obtained permission from Enciso, the owner of the property, to search the premises; he found defendant hiding in a vehicle parked in the carport alongside of the home. Defendant was arrested.

At the station Officer Trembley advised defendant of his

constitutional rights and then asked him if he understood these rights; defendant said yes. Defendant told him he saw two persons in the area where the driver of his car was standing; he heard an argument between them and saw another with a flare and one with a pipe in his hand; it became pretty involved so he grabbed a beer bottle, broke it on the running board area and walked to where the argument was taking place; he made a gesture toward Kidder at which time Kidder appeared to him to draw his arms up in an effort to strike him; at this time he lunged forward and struck Kidder in the face with the broken beer bottle.

Defendant testified that he was in a vehicle driven by Aparicio; he threw a 7-Up bottle and it hit the curb; as Aparicio drove away the car was blocked and Kidder approached Aparicio; they had words; the other four occupants of the car got out; he then grabbed a bottle, broke it on the pavement, and went over to Walt and Kidder and told them to leave; they backed up a few steps; he then saw one of the occupants of Kidder's car pull a pipe from his coat pocket and a red flare; Kidder picked up his arm and he was afraid thinking he was going to jump him; he didn't think, and cut Kidder because he was scared and afraid of the other fellows with the pipe and flare. He hid inside the car because he was afraid of being arrested.

Appellant concedes that the record is ''reasonably free of error'' except for ''the human error he made in not motioning for a continuance in a timely manner because of the unavailability of his witnesses.'' He says that the court should have granted his motion for a new trial.

Defendant was represented by a deputy public defender. After the judge stated he had read and considered the probation report, defense counsel said he too had read it ''and arraignment for judgment and sentence is waived, and there is no legal cause why sentence should not now be imposed.'' He then proceeded to ask the leniency of the court. After discussion with the deputy public defender and prosecutor, the court denied probation and sentenced defendant to the state prison. Then defendant said ''I would like to make a motion for retrial on the grounds I didn't have no witness on my behalf, and he issued subpoenaes, and the State made sure their witnesses were here and they didn't make sure my witnesses were.'' The court stated that it was too late to make a motion for new trial, but advised defendant that he could file a notice of appeal.

■ An application for a new trial must be made and determined before judgment; after judgment has been entered the court has no jurisdiction to hear the motion. (§ 1182, Pen. Code; *People* v. *Martin,* 60 Cal.2d 615, 618 [35 Cal.Rptr. 769, 387 P.2d 585].) However, a judgment is not effective until entered by the clerk of the court. (*People* v. *Jaramillo,* 208 Cal.App.2d 620, 627 [25 Cal.Rptr. 403] ; *People* v. *Grake,* 227 Cal.App.2d 289, 292-293 [38 Cal.Rptr. 666] ; *People* v. *Hales,* 244 Cal.App.2d 507, 510-512 [53 Cal.Rptr. 161].) Under *Jaramillo,* inasmuch as defendant spoke up promptly after pronouncement of judgment and sentence, the judge could have vacated the judgment prior to its entry. This he did not do and refused to entertain the motion; he did not deny it.

Even had the judge heard the merits of defendant's "motion for retrial" as a motion for a new trial, it would have been denied. ■ A statutory right, a motion for a new trial in a criminal case may be made only on the grounds enumerated in section 1181, Penal Code. (*People* v. *Dillard,* 168 Cal.App.2d 158, 167 [335 P.2d 702].) Defendant's stated ground for his motion was that he did not have any witnesses on his behalf, although he issued subpoenas. This falls into no subdivision of section 1181, Penal Code, unless it could be considered as "newly discovered evidence" under subdivision 8. ■ A motion for a new trial on this ground will be denied unless the movant sets up the evidence he claims to be "newly discovered," and establishes by the best evidence of which the case admits that the evidence is newly discovered, not merely cumulative, it is such as to render a different result probable on retrial of the cause, and he could not with reasonable diligence have discovered and produced it at the trial. (*People* v. *Williams,* 57 Cal.2d 263, 270 [18 Cal.Rptr. 279, 368 P.2d 353].) ■ Defendant's statement that he did not have any witnesses although he issued subpoenas, does not automatically place his motion in subdivision 8, section 1181; this is not the kind of situation contemplated by the statute. Obviously at the time of trial defendant knew the identity of his witnesses (those in Aparicio's car who observed the incident), their whereabouts and to what they would testify, that they had been subpoenaed and that they had failed to appear. He requested no continuance for the purpose of securing their presence. Clearly, defendant's motion, had the court entertained it as a motion for a new trial, would have been denied; the evidence he could have offered by his witnesses was neither new or newly discovered, and de-

fendant had not exercised due diligence in requiring their presence at the trial.

While there appears to be a conflict in the evidence as to what occurred after Kidder came up to Aparicio's car, the evidence is clear, even from defendant's own testimony, that he assaulted Kidder with a deadly weapon, a broken beer bottle, and that he intended to commit a violent injury upon him. (*People* v. *Claborn*, 224 Cal.App.2d 38, 42 [36 Cal.Rptr. 132] ; *People* v. *Corson*, 221 Cal.App.2d 579, 582 [34 Cal.Rptr. 584] ; *People* v. *Herd*, 220 Cal.App.2d 847, 850 [34 Cal.Rptr. 141].)

■ Nor is there any error in the admission in evidence of defendant's statements to the police officer. The rules of *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], apply herein for the defendant's trial commenced on June 14, 1966. (*People* v. *Rollins*, 65 Cal.2d 681, 691-692 [56 Cal.Rptr. 293, 423 P.2d 221].) The record shows that prior to his conversation with defendant at the police station after the arrest, Officer Trembley advised him "that he had a right to an attorney, including any conversation which he had with the officers and through any proceedings which may result from the conversation; he had a right to remain silent; that anything he did say could be used against him in court as evidence." The officer also advised him that a public defender would be appointed to represent him if he could not afford an attorney. Then the officer asked defendant whether he understood those rights and defendant stated "Yes." It was after this that he made certain statements to the officer. On *voir dire* examination the deputy public defender inquired into the matter of the officer's advice to the defendant that if he could not afford an attorney that one would be appointed to represent him. Apparently he was convinced that defendant had been properly advised under the rules of *Miranda* and no objection was made to the admission in evidence of defendant's statements to the police officer. Nor does appellant herein raise any such issue.

■ Finally, defendant was represented by a deputy public defender who put on the best defense he could under the circumstances. His failure to call witnesses who had been subpoenaed may well have been one of trial strategy. There are a variety of reasons having nothing to do with deprivation of the effective assistance of counsel that may have caused the deputy public defender to not call the other persons in the car as defense witnesses. (*People* v. *Ibarra*, 60 Cal.2d 460, 465-466

[34 Cal.Rptr. 863, 386 P.2d 487]; *In re Rose,* 62 Cal.2d 384, 389-391 [42 Cal.Rptr. 236, 398 P.2d 428]; *People* v. *Huffman,* 248 Cal.App.2d 260, 262-263 [56 Cal.Rptr. 255]; *People* v. *Hales,* 244 Cal.App.2d 507, 513-514 [53 Cal.Rptr. 161].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.