Filed 2/3/25  P. v. Balangue CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY HENRY BALANGUE,<br><br>Defendant and Appellant. | F086532<br><br>(Super. Ct. No. PCF354765A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

In *People v. Balangue* (Apr. 25, 2022, F079271 [nonpub. opn.]), this court partially affirmed and partially reversed a judgment of conviction against Anthony Henry Balangue (defendant) in Tulare Superior Court case No. PCF354765A (PCF354765A or

the "attempted murder case").  The cause was remanded for the limited purpose of resentencing.  On remand, defense counsel moved for a new trial based on Evidence Code section 352.2—a statute enacted after the remittitur was issued in *Balangue*.  The trial court denied the motion on two grounds, concluding (1) it did not have jurisdiction to hear a motion for new trial and (2) Evidence Code section 352.2 did not apply retroactively to defendant's case.  After being resentenced, defendant filed a notice of appeal solely pertaining to PCF354765A and the denial of his motion.

We conclude defendant's motion for new trial was properly denied.  Defendant makes an additional claim regarding the trial court's issuance of a protective order, which the People appropriately concede was unauthorized.  We will modify the judgment in PCF354765A by striking the protective order and affirm the judgment as modified.

Defendant also presents claims regarding the judgment in Tulare Superior Court case No. PCF322492 (PCF322492 or the "VOP case").  The judgment in PCF322492 was fully affirmed in *Balangue*, i.e., the cause was not remanded to the trial court.  However, in addition to resentencing defendant in PCF354765A, the trial court also resentenced him in PCF322492.  Defendant contends the resentencing in PCF322492 was unauthorized.

Defendant acknowledges he did not file a notice of appeal as to PCF322492.  Although defendant contends this court has jurisdiction to resolve his claims regarding PCF322492, he provides no authority for his position.  Defendant fails to establish that we actually have jurisdiction over the matter.  As will be explained, any relief concerning the sentence in PCF322492 must be sought by petitioning for a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

A detailed factual summary is provided in the opinion filed in *Balangue*, *supra*, F079271, which we incorporate by reference.  Defendant's request for judicial notice of the appellate record in *Balangue* is hereby granted.  (Evid. Code, §§ 452, subd. (d), 459.)

Because the trial evidence has limited relevance to the issues on appeal, we focus on the procedural history.

***2012–2019***

The attempted murder case, PCF354765A, was based on events that occurred in June 2012. The district attorney's office initially declined to file charges in the matter. Approximately two years later, defendant was arrested for an entirely unrelated incident. That arrest led to his prosecution in PCF322492 for a drive-by shooting committed in March 2014.

In late 2015, defendant entered into a plea agreement to resolve PCF322492. Defendant pleaded no contest to assault with a firearm and unlawful gun possession. He also admitted the truth of several enhancement and recidivism allegations. Defendant was granted probation in exchange for his plea. The trial court imposed a stipulated 14-year prison sentence and suspended execution of the sentence pending successful completion of a five-year probation term.

In July 2017, the People filed a violation of probation (VOP) petition in PCF322492. Defendant was alleged to have violated the terms of his probation by associating with known gang members.

In August 2017, while the VOP case was pending, the district attorney's office decided to prosecute defendant for the incident that occurred in 2012. This resulted in defendant being charged with two counts of attempted murder in case PCF354765A.

In March 2019, defendant was found to have violated probation as alleged in the PCF322492 VOP petition. The pronouncement of judgment in the VOP case was postponed until the completion of the attempted murder case.

On April 11, 2019, in case PCF354765A, defendant was convicted of two counts of attempted murder with premeditation. The crimes were found to be gang related for purposes of Penal Code section 186.22, subdivision (b). True findings were made on firearm enhancement allegations pursuant to section 12022.53. Defendant was also

3.

found to have suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12.), which further constituted a prior serious felony conviction (*id.*, § 667, subd. (a)).

Defendant was sentenced in both cases on May 2, 2019.  In the attempted murder case, the trial court imposed an aggregate prison term of 28 years to life, plus 25 years for the enhancements.  In the VOP case, the trial court imposed an aggregate prison term of seven years.

### *Balangue (2019–2022)*

The notice of appeal in *Balangue*, *supra*, F079271 listed both cases numbers, PCF322492 and PCF354765A.  However, defendant's appellate briefs raised no issues regarding the VOP case (PCF322492).  This court treated the appeal in PCF322492 as abandoned and concluded all related claims had been forfeited.  Consequently, the judgment in PCF322492 was affirmed in full.

Regarding the attempted murder case (PCF354765A), defendant successfully challenged the sufficiency of evidence supporting the gang findings and certain other enhancements.  His arguments for reversal of the attempted murder convictions were rejected.

The disposition of *Balangue* reads as follows:  "In PCF354765A, the true findings on all enhancements alleged pursuant to [Penal Code] sections 186.22, 667.5, and 12022.53 are reversed for insufficient evidence.  The cause is remanded for resentencing.  In all other respects, the judgment is affirmed.  [¶] The judgment in PCF322492 is affirmed."

### *Remand Proceedings (2022–2023)*

The remittitur in *Balangue*, *supra*, F079271 was issued on July 28, 2022.  Two months later, on September 30, 2022, the Governor signed Assembly Bill No. 2799 (2021–2022 Reg. Sess.).  The new legislation added section 352.2 to the Evidence Code, effective January 1, 2023.  (Stats. 2022, ch. 973, § 2.)  Evidence Code section 352.2

4.

(section 352.2) now governs the admissibility of "rap lyrics and other creative expression" in criminal proceedings. (Stats. 2022, ch. 973, § 1, subd. (b).)

In May 2023, defendant moved for a new trial in PCF354765A based on the enactment of section 352.2. As noted in the motion papers, the People's trial evidence had included music videos of defendant performing songs with gang-themed lyrics. The evidence was the subject of a pretrial motion in limine, and it had been admitted over defendant's objections.

In June 2023, defendant's motion was heard and denied. The trial court provided two explanations for its ruling. First, based on the limited scope of remand as stated in the *Balangue* disposition, the trial court doubted it had jurisdiction to consider a motion for new trial. Second, in reliance upon *People v. Ramos* (2023) 90 Cal.App.5th 578, review granted July 12, 2023, S280073, the court concluded section 352.2 does not apply retroactively.

Defendant was resentenced on July 6, 2023. The trial court imposed new sentences in both the VOP case and the attempted murder case. In the VOP case, defendant was resentenced to an aggregate determinate prison term of 14 years. Further details regarding the sentence in PCF322492 are provided in the Discussion, *post*.

In PCF354765A, the trial court imposed consecutive life sentences for both counts of attempted premeditated murder. (Pen. Code, § 664, subd. (a).) The parole ineligibility periods were doubled to 14 years on each count because of defendant's prior strike conviction. (See *id*., §§ 667, subd. (e)(1), 3046, subd. (a)(1).) Although defendant was subject to an additional five-year term for a prior serious felony conviction (*id*., § 667, subd. (a)), the trial court said it was "staying the punishment [for the enhancement,] with no custody credits," because the PCF354765A sentence was "being run consecutive to case number PCF322492." The trial court also reissued a 10-year protective order, which had previously been imposed under Penal Code section 136.2, subdivision (i)(1).

5.

Defendant filed a notice of appeal as to the judgment in PCF354765A, i.e., the attempted murder case.

## DISCUSSION

### I. Denial of Motion for New Trial

Defendant disputes both of the trial court's reasons for denying his motion for new trial in PCF354765A. We will briefly address the jurisdictional issue before discussing whether section 352.2 applies retroactively. It is unnecessary to decide whether the trial court had jurisdiction to consider a motion for new trial because, even assuming it did, we conclude section 352.2 is not retroactive.

#### A. Jurisdiction

"The application for a new trial must be made and determined before judgment …." (Pen. Code, § 1182.) The deadline is jurisdictional. "[A]fter judgment has been entered the court has no jurisdiction to hear the motion." (*People v. Sainz* (1967) 253 Cal.App.2d 496, 500.)

"'If the judgment is vacated or set aside, the motion for new trial may then be entertained.'" (*People v. Pineda* (1967) 253 Cal.App.2d 443, 449.) However, "[t]he affirmance of the issue of guilt on the first appeal precludes subsequent review by the trial court on a motion for new trial." (*Id.* at p. 453; see Pen. Code, § 1263 ["If a judgment against the defendant is affirmed, the original judgment must be enforced"].) Because appellate courts have the "power and authority to open the penalty aspect of the judgment without affecting the finality of the adjudication of guilt" (*Pineda*, at p. 451), case law holds that a motion for new trial cannot be heard on remand if the cause was remanded only for resentencing. (*People v. Smyers* (1969) 2 Cal.App.3d 666, 668–669; *People v. Clifton* (1969) 270 Cal.App.2d 860, 861–862; *Pineda*, at pp. 449–454; *People v. Oppenheimer* (1965) 236 Cal.App.2d 863, 866; see *People v. Deere* (1991) 53 Cal.3d 705, 713, citing *Smyers*, at p. 668.)

Defendant purports to rely on this district's opinion in *People v. Mitchell* (2023) 97 Cal.App.5th 1127, review granted February 21, 2024, S283474. The *Mitchell* case dealt with a similar jurisdictional issue but did not involve a motion for new trial. The trial court in *Mitchell* had questioned, sua sponte, whether the appellant's conviction of gang participation under Penal Code section 186.22 and separate gang enhancements were affected by the enactment of Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333). (*Mitchell*, at pp. 1130, 1137.) The trial court "concluded that it lacked jurisdiction to address the validity of appellant's gang conviction and the gang enhancements" because the issue had arisen after the cause was remanded for the sole purpose of resentencing. (*Id*. at p. 1130.) The remittitur in the earlier appeal was issued prior to the enactment of Assembly Bill 333. (*Ibid*.)

In his briefing, defendant contends *Mitchell* "held that when a case has been remanded for resentencing, the trial court has jurisdiction to consider granting retroactive relief based on new legislation." A close reading of *Mitchell* reveals the appellate panel never decided the scope of the trial court's jurisdiction in the earlier remand proceedings. Contrary to defendant's assertion, the panel stated that the trial court "may have been bound by the scope of the prior remittitur." (*People v. Mitchell*, *supra*, 97 Cal.App.5th at p. 1143, rev. granted; see *id*. at p. 1144, fn. 2 (conc. opn. of Poochigian, Acting P. J.).) The *Mitchell* opinion recognizes that a lower court's actions on remand are constrained by the "'express jurisdictional limits'" of the remittitur. (*Mitchell*, at p. 1140, quoting *People v. Lewis* (2004) 33 Cal.4th 214, 228; see *People v. Picklesimer* (2010) 48 Cal.4th 330, 337 ["Following appellate affirmance of a trial court judgment and issuance of a remittitur, 'the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court*'"].)

The issue in *Mitchell* was when a judgment "becomes final for purposes of retroactivity under [*In re Estrada* (1965) 63 Cal.2d 740]." (*People v. Mitchell*, *supra*, 97 Cal.App.5th at p. 1137, rev. granted; see *id*. at p. 1130 ["[W]e hold that, because this

7.

matter is still pending before us, it cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect"].) The ultimate question was whether the appellant was "entitled to the retroactive application of Assembly Bill 333" in his second appeal, i.e., on appeal from the judgment entered on remand. (*Mitchell* at p. 1142.) The *Mitchell* court's holdings with regard to finality were confirmed to be correct in *People v. Lopez* (Jan. 23, 2025) __ Cal.5th __ [2025 Cal. LEXIS 173].

The recent *Lopez* decision does resolve the jurisdictional question left unanswered by this court in *Mitchell*. It holds that *if* new legislation applies retroactively, a superior court does have jurisdiction "to provide relief under [the] applicable ameliorative laws" when a case has been "conditionally reversed and remanded … to address sentencing issues." (*People v. Lopez*, *supra*, __ Cal.5th at p. __ [2025 Cal.LEXIS 173, *17].) But *Lopez* is not helpful to defendant unless he can show the statute at issue here, section 352.2, applies retroactively. As explained in the next part of this opinion, we conclude it does not.

###### B.    Retroactivity

###### *1.    Overview*

An uncodified preamble to Assembly Bill No. 2799 explains the statute was enacted in response to earlier precedent allowing "artists' creative expression to be admitted as evidence in criminal proceedings without a sufficiently robust inquiry into whether such evidence introduces bias or prejudice into the proceedings." (Stats. 2022, ch. 973, § 1, subd. (a).) The Legislature found that "a substantial body of research shows a significant risk of unfair prejudice when rap lyrics are introduced into evidence." (*Ibid.*) The legislative intent behind section 352.2 was "to provide a framework by which courts can ensure that the use of an accused person's creative expression will not be used to introduce stereotypes or activate bias against the defendant, nor as character or

8.

propensity evidence; and to recognize that the use of rap lyrics and other creative expression as circumstantial evidence of motive or intent is not a sufficient justification to overcome substantial evidence that the introduction of rap lyrics creates a substantial risk of unfair prejudice." (Stats. 2022, ch. 973, § 1, subd. (b).)

The text of section 352.2 provides, in relevant part:

"(a) In any criminal proceeding where a party seeks to admit as evidence a form of creative expression, the court, while balancing the probative value of that evidence against the substantial danger of undue prejudice under [Evidence Code] Section 352, shall consider, in addition to the factors listed in [Evidence Code] Section 352, that: (1) the probative value of such expression for its literal truth or as a truthful narrative is minimal unless that expression is created near in time to the charged crime or crimes, bears a sufficient level of similarity to the charged crime or crimes, or includes factual detail not otherwise publicly available; and (2) undue prejudice includes, but is not limited to, the possibility that the trier of fact will, in violation of [Evidence Code] Section 1101, treat the expression as evidence of the defendant's propensity for violence or general criminal disposition as well as the possibility that the evidence will explicitly or implicitly inject racial bias into the proceedings.

"(b) If proffered and relevant to the issues in the case, the court shall consider the following as well as any additional relevant evidence offered by either party:

"(1) Credible testimony on the genre of creative expression as to the social or cultural context, rules, conventions, and artistic techniques of the expression.

"(2) Experimental or social science research demonstrating that the introduction of a particular type of expression explicitly or implicitly introduces racial bias into the proceedings.

"(3) Evidence to rebut such research or testimony."

Section 352.2 also defines the term "creative expression" and further specifies the procedural steps for determining the admissibility of such evidence. (*Id*., subds. (c), (d).) The issue of retroactive applicability is not addressed in the uncodified preamble or the statute itself.

9.

## 2. *Law and Analysis*

"Ordinarily, statutes are presumed to apply only prospectively, unless the Legislature expressly declares otherwise. This well-settled principle is codified at section 3 of the Penal Code and appears in other codes as well." (*People v. Burgos* (2024) 16 Cal.5th 1, 7–8.) Although the presumption is not codified within the Evidence Code, it applies all the same to section 352.2. (See, e.g., *People v. Hayes* (1989) 49 Cal.3d 1260, 1274 [applying presumption of prospective-only application to Evid. Code, § 795 (Stats. 1984, ch. 479), which "contained no retroactivity clause"]; see also *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301, fn. 18 [noting Pen. Code, § 3 "simply embodies the general, common law presumption that new statutes operate prospectively"].)

The default presumption against retroactivity is subject to an exception known as the *Estrada* rule. (See *In re Estrada*, *supra*, 63 Cal.2d at pp. 744–748 (*Estrada*).) When a new or amendatory statute "mitigates punishment and there is no saving clause, the rule is that the [statute] will operate retroactively so that the lighter punishment is imposed." (*Id.* at p. 748.) More specifically, "[w]hen new legislation reduces the punishment for an offense, we presume that the legislation applies to all cases not yet final as of the legislation's effective date." (*People v. Esquivel* (2021) 11 Cal.5th 671, 673.) "The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible ….'" (*People v. Buycks* (2018) 5 Cal.5th 857, 881.)

Over the past several years, in light of *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299 (*Lara*) and *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), there appeared to be a trend toward applying the *Estrada* rule "to statutes that merely made a reduced punishment *possible*" (*Frahs*, at p. 629). In *Lara*, the inference of retroactivity was extended to legislation that "ameliorated the possible punishment for a class of persons." (*Lara*, at p. 308.) In *Frahs*, a pretrial diversion statute was held to apply retroactively

10.

because it offered "a potentially ameliorative benefit for a class of individuals—namely, criminal defendants who suffer from a qualifying mental disorder." (*Frahs*, at p. 631.)

More recently, in *People v. Burgos*, *supra*, 16 Cal.5th 1 (*Burgos*), the California Supreme Court distinguished *Lara* and *Frahs* as cases involving statutes that "created a concrete avenue" for some criminal defendants "to be treated more leniently or avoid punishment altogether." (*Burgos*, at p. 13.) "The crux of the statutes at issue in *Lara* and *Frahs*, and what mattered for purposes of [the retroactivity] analysis, was the path to reduced punishment based on a legislative judgment that the punishments prescribed by law for certain offenses are frequently inappropriate for certain classes of persons who bear reduced culpability for their crimes." (*Burgos*, at p. 23.) Such laws were contrasted with legislation that modifies discrete "aspects of how criminal cases are investigated or tried." (*Id*. at p. 15.) Legislative enactments in the latter category are not ordinarily viewed as ameliorative for purposes of the *Estrada* rule. (See *Burgos*, at pp. 15–16, 22–24.) "The further any particular amendatory act is from a clear reduction of punishment, or removal of a class of defendants from the criminal system altogether, … [the] more speculative the inference of retroactivity becomes." (*Id*. at p. 21.)

The statute at issue in *Burgos* was Penal Code section 1109, as enacted by Assembly Bill 333, which allows defendants to compel the bifurcation of gang charges filed under Penal Code section 186.22. It was held "that the *Estrada* inference of retroactivity does not extend to section 1109." (*Burgos*, *supra*, 16 Cal.5th at p. 8.) "By its terms, section 1109 does not directly or potentially reduce the punishment for an offense. Nor does it change the elements of a substantive offense, defense, or penalty enhancement. Likewise, it does not create an alternative avenue for certain individuals to receive lesser or no punishment." (*Burgos*, at p. 21.) The legislative intent to "promote fairness and reduce the potential for prejudice in trial proceedings where a gang enhancement is alleged" was deemed "insufficient to rebut [the] 'strong presumption of prospective operation.'" (*Burgos*, at p. 24.) The Legislature's stated concerns "regarding

11.

racial and socioeconomic disparities relating to prosecution under the gang enhancement statute" were also insufficient to rebut the presumption. (*Id*. at p. 19.)

The *Burgos* opinion seems to clearly indicate that "*Estrada*'s limited inference of retroactivity" is reserved for "statutes that either reduce the punishment for a criminal offense or create discretion to reduce such punishment, or narrow the scope of criminal liability." (*Burgos*, *supra*, 16 Cal.5th at p. 16.) At the outer limits of its application, the *Estrada* rule may extend to statutes that create an alternative procedural "avenue for certain individuals charged with a criminal offense to be treated more leniently or avoid punishment altogether." (*Burgos*, at p. 13; see *id*. at p. 21.) Mindful of this recent guidance from our Supreme Court, we turn to defendant's claim regarding section 352.2.

To date, only one published decision holds that section 352.2 applies retroactively: *People v. Venable* (2023) 88 Cal.App.5th 445, review granted May 17, 2023, S279081. The opposite conclusion was reached in *People v. Slaton* (2023) 95 Cal.App.5th 363, review granted November 15, 2023, S282047, *People v. Ramos*, *supra*, 90 Cal.App.5th 578, review granted, and the majority of unpublished opinions in which the issue has been decided.

In *Venable*, Division Two of the Fourth District Court of Appeal relied on *Lara*, *Frahs*, and the Sixth Appellate District's now overturned decision in *People v. Burgos* (2022) 77 Cal.App.5th 550. (*People v. Venable*, *supra*, 88 Cal.App.5th at pp. 456–458, review granted.) Observing that Penal Code section 1109 "is similar in its purpose and effect" to section 352.2, *Venable* endorsed the Sixth District's incorrect conclusion that Penal Code section 1109 applies retroactively and held "[t]he same is true of Evidence Code section 352.2." (*Venable*, at p. 458.) The *Venable* court did not have the benefit of our Supreme Court's opinion in *Burgos*, which greatly undermines *Venable*'s rationale for finding section 352.2 to be retroactive.

According to *Venable*, the inference of retroactivity is compelled by the "ameliorative benefit" conferred upon "defendants of color" in the form of "a trial

conducted without evidence that introduces bias and prejudice into the proceedings." (*People v. Venable*, *supra*, 88 Cal.App.5th at p. 456, review granted.) In *Burgos*, however, a five-to-two majority of the California Supreme Court rejected the notion that "an intent to promote fairness and reduce the potential for prejudice in trial proceedings" equates to "an intent to lessen punishment within the meaning of *Estrada* and its progeny." (*Burgos*, *supra*, 16 Cal.5th at p. 24.) "Most statutory changes are, of course, intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively." (*Id*. at p. 26.) In the majority's view, "'there is a manifest distinction between the Legislature's creation of new criminal procedures designed to enhance fairness and its enactment of provisions that reduce the possibility of punishment.'" (*Id*. at pp. 27–28.)

Section 352.2 was held to apply only prospectively in *People v. Slaton*, *supra*, 95 Cal.App.5th 363, review granted, and *People v. Ramos*, *supra*, 90 Cal.App.5th 578, review granted. Those opinions also predate the *Burgos* decision, but the analysis in *Ramos* and *Slaton* regarding section 352.2 is substantially the same as the high court's analysis of Penal Code section 1109. The *Ramos* opinion states, in relevant part, "Even though Evidence Code section 352.2 may, in many instances, end up being beneficial to a criminal defendant in that it may result in the exclusion of evidence favorable to the People, it is not a statute that creates the possibility of *lesser punishment* or any other type of more lenient treatment. It is also not a statute that *reduces criminal liability*, such as by altering the substantive requirements for a conviction or expanding a defense. … [¶] … It is therefore not an ameliorative enactment within the meaning of *Estrada*." (*Ramos*, at pp. 595–596, fn. omitted.)

The *Slaton* court reached the same conclusion as *Ramos* for essentially the same reasons. (*People v. Slaton*, *supra*, 95 Cal.App.5th at pp. 372–376, review granted.)

13.

"Unlike the laws in [*Lara* and *Frahs*], section 352.2 is not a law that by design and function reduces the possible punishment for an offense." (*Slaton*, at p. 376.) The *Slaton* opinion further notes that section 352.2 is a "neutral" rule and could theoretically benefit the prosecution instead of the defense in certain situations. (*Slaton*, at pp. 373, 376.) "Neutral evidentiary rules of this sort do not warrant *Estrada* treatment." (*Id.* at p. 373, citing *People v. Ramos*, *supra*, 90 Cal.App.5th at p. 595, review granted.)

Here, defendant's arguments for retroactive application of section 352.2 cannot be reconciled with the *Burgos* decision. The statute merely establishes a new process for determining the admissibility of a particular category of evidence. Section 352.2 does not guarantee that "creative expression" evidence will be excluded in any given case, much less reduce the punishment for a criminal offense. (Cf. *Burgos*, *supra*, 16 Cal.5th at p. 21 ["By its terms, [Penal Code] section 1109 does not directly or potentially reduce the punishment for an offense"].) "Nor does it change the elements of a substantive offense, defense, or penalty enhancement. Likewise, it does not create an alternative avenue for certain individuals to receive lesser or no punishment." (*Ibid*.) Much like Penal Code section 1109, Evidence Code section 352.2 is a prophylactic rule that modifies certain aspects of trial procedure in criminal cases. (*Burgos*, at p. 21; e.g., Evid. Code, § 352.2, subd. (d) ["The question of the admissibility of a form of creative expression shall be heard in limine and determined by the court, outside the presence and hearing of the jury, pursuant to [Evidence Code] section 402"].) The *Estrada* rule "infers retroactivity from statutory reductions in punishment, not from the type of prophylactic rules" embodied in section 352.2's provisions. (*Burgos*, at p. 8.) We therefore conclude section 352.2 does not apply retroactively.

## II. Unauthorized Protective Order

In May 2019, when defendant was originally sentenced in the attempted murder case, the trial court issued a no-contact protective order "as to both victims … under

14.

Penal Code Section 136.2[,] [subdivision] (i)(1)." When defendant was resentenced in July 2023, the trial court granted the prosecutor's request to reissue the protective order for a 10-year period. The trial court stated, "The criminal protective order in case number ending 765 is reordered from today to be effective 10 years, from today, 10 years, on the previous terms and conditions."

Defendant claims the protective order was unauthorized. The People concede this issue and agree the order should be stricken from the judgment. We accept the concession.

"Courts 'have construed [Penal Code] section 136.2, subdivision (a) to authorize imposition of protective orders only during the pendency of the criminal action. [Citations.] Thus, once the defendant is found guilty and sentenced, the court's authority to issue a protective order under section 136.2, subdivision (a) generally ceases.'" (*People v. Lopez* (2022) 75 Cal.App.5th 227, 236.) Limited exceptions allowing for postconviction protective orders lasting "up to 10 years" are set forth in subdivision (i)(1).

The relevant provision states, in pertinent part: "When a criminal defendant has been convicted of a crime involving domestic violence, as defined in Section 13700 or in Section 6211 of the Family Code, a violation of subdivision (a), (b), or (c) of Section 236.1 prohibiting human trafficking, Section 261, 261.5, former Section 262, subdivision (a) of Section 266h, or subdivision (a) of Section 266i, a violation of Section 186.22, or a crime that requires the defendant to register pursuant to subdivision (c) of Section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime." (Pen. Code, § 136.2, subd. (i)(1).)

In short, Penal Code section 136.2 authorizes postconviction protective orders only in cases involving domestic violence, human trafficking, rape and other sex offenses, and gang crimes. The protective order issued in 2019 was presumably based on

15.

the jury's gang enhancement findings. Those findings were reversed for insufficient evidence in *Balangue*, *supra*, F079271. When defendant was resentenced in 2023, there were no convictions or findings upon which a new protective order could be based. (Pen. Code, § 136.2, subd. (i)(1).) The protective order was therefore unauthorized and will be stricken from the judgment.

## III. Resentencing in PCF322492

Defendant claims the trial court had no jurisdiction to resentence him in PCF322492, i.e., the VOP case. The People disagree. For this court, the dispositive issue is appellate jurisdiction. It is defendant's burden to demonstrate appealability (see Cal. Rules of Court, rule 8.204(a)(2)(B)), and the burden has not been met.

### A. Additional Background

Defendant was originally sentenced in PCF322492 on December 14, 2015. The trial court imposed punishment but suspend execution of the sentence for a five-year probationary period. Defendant was sentenced to a stipulated determinate prison term of 14 years. The sentence was calculated using the middle term of three years for assault with a firearm (Pen. Code, § 245, subd. (a)(2)); count 3), plus consecutive terms of five years for a prior serious felony conviction (*id.*, § 667, subd. (a)); three years for a gun enhancement (*id.*, § 12022.5, subd. (a)); and three years for a great bodily injury enhancement (*id.*, § 12022.7, subd. (a)). Defendant was also convicted of unlawful firearm possession (*id.*, § 29800, subd. (a); count 4), for which the trial court simply declared, "As to Count 4, I'm not imposing any additional time."

A VOP petition was filed in July 2017, less than two years into the probationary period. On March 1, 2019, the petition was sustained. Further action in the VOP case was deferred pending the conclusion of the attempted murder case.

On May 2, 2019, defendant was sentenced to an indeterminate life term in the attempted murder case. The life sentence was ordered to be served consecutive to the

16.

determinate term in the VOP case. No custody credits were awarded in the attempted murder case; the reason being that all credits would be applied to the determinate term in the VOP case. (See Pen. Code, § 669, subd. (a) ["Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to [Penal Code] Section 3046"].)

After sentencing defendant in the attempted murder case, the trial court stated its belief, based on its "review of the sentencing laws," that defendant needed to be "re-sentenced" in the VOP case. The prosecutor concurred, but a disagreement arose over whether the court could alter the stipulated 14-year prison term it had previously imposed in 2015. The trial court concluded it had authority to change the sentence, and it ordered the original sentence reduced to an aggregate prison term of seven years. The new sentence was calculated using the middle term of three years for count 3 and the middle term of four years for the gun enhancement (the trial court had previously imposed the lower term for this enhancement). Punishment for all other enhancements was "stayed." The trial court further imposed a two-year prison term for count 4 but ordered it to be served concurrently. Defendant was awarded 1,377 days of custody credit against the new seven-year sentence.

As earlier discussed, defendant originally appealed from the judgments in both PCF322492 and PCF354765A. No claims were made as to the VOP case (PCF322492), and that judgment was affirmed in full. The judgment in PCF354765A (the attempted murder case) was partially affirmed and partially reversed, and only that case was remanded for resentencing.

In remand proceedings conducted on July 6, 2023, the trial court began by resentencing defendant *in the VOP case* (PCF322492). No explanation was given for this resentencing, nor did the parties voice any concerns. Without objection from defendant,

17.

the trial court essentially reimposed the original 14-year prison term, i.e., the punishment to which the parties had originally stipulated, and which had originally been imposed in 2015. The pronouncement of judgment (in July 2023) was as follows:

> "In Count 3, you're committed to state prison for the mid-term of 3 years plus 5 years pursuant to Penal Code Section 667(a)(1) plus 3 years pursuant to Penal Code Section 12022.7(a) plus 3 years pursuant to Penal Code Section 12022.5(a)(1), with credit for 2724 actual days served. The balance of his credits will be determined by the Department of Corrections.

> "In Count 4, you're committed to state prison for the mid-term of 2 years with credit for … 2724 days actual time spent in custody. Again, the remaining credits to be determined by the Department of Corrections. Said term to run concurrent to Count 3."

After resentencing defendant in the VOP case, the trial court proceeded to resentence him in the attempted murder case. As before, the indeterminate life term in the attempted murder case (PCF354765A) was ordered to "run consecutive to case number PCF322492." Also like before, defendant was not awarded any custody credits against the indeterminate life term.

On July 7, 2023, defendant filed a notice of appeal concerning the judgment in PCF354765A, i.e., the attempted murder case. Attached to the notice of appeal is a typewritten explanation provided by defendant's retained counsel below explaining the grounds for the appeal and theories of error. There is no mention of the VOP case anywhere in the notice of appeal, nor any allegations of sentencing error. There are additional attachments to the notice of appeal, but all pertain to the denial of defendant's motion for new trial in the attempted murder case.

## B.    Law and Analysis

Defendant argues the trial court had no jurisdiction to resentence him in the VOP case. He also makes the following contention: "Because the judgment imposing a 7 year sentence was affirmed on appeal [in *Balangue*, *supra*, F079271], and because the 7-year term was fully served [by the time of the proceedings on remand], resentencing

18.

[defendant] to a lengthier term after the sentence was served was not only beyond the jurisdiction of the [trial] court, it violated double jeopardy."

Defendant does acknowledge a potential problem with regard to appealability. The People ignore this issue in their briefing, choosing instead to dispute defendant's claim on the merits. Despite the lack of objection by the People, this court has a sua sponte duty to determine the existence of appellate jurisdiction. (*People v. Clark* (2021) 67 Cal.App.5th 248, 254; see *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126–127.)

To appeal from a criminal judgment, a defendant must file a notice of appeal in the superior court within 60 days of the rendition of judgment. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1094.) A defendant's notice of appeal must be liberally construed, and "the notice is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.304(a)(4).) However, "[t]he rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only part of the judgment or one of two separate appealable judgments or orders. [Citation.] 'Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed.'" (*Norman I. Krug Real Estate Investments*, *Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47.)

Defendant concedes his notice of appeal "does not mention Case No. PCF322492." He does not argue jurisdiction could be found by a liberal construction of the notice, nor could such an argument be made. Defendant clearly made no attempt to appeal the judgment in PCF322492. "As in every case, the scope of our review is dictated by unforgiving jurisdictional confines and the parties' own procedural decisions." (*Vallejo v. Superior Court* (2021) 73 Cal.App.5th 132, 135.) Defendant's

failure to appeal from the allegedly void resentencing in PCF322492 leads us to conclude we do not have jurisdiction to resolve his claims.[1]

Defendant contends the alleged sentencing error in PCF322492 means the trial court also erred in the attempted murder case (PCF354765A). Because the trial court ordered the indeterminate life term to run consecutive to the determinate term in the VOP case, defendant argues the combined aggregate prison sentence is void. Defendant goes on to propose, without supporting authority, that "[w]hen there is a single aggregate sentence that results from combining sentences from different cases, an appeal in one case should be sufficient to challenge the aggregate sentence."

Penal Code section 669, subdivision (a) authorizes trial courts to order an indeterminate life sentence in one case to be served consecutive to a determinate prison term in another case. Although the sentences in PCF322492 and PCF354765A may be viewed as components of a total aggregate prison term, that does not mean the judgments somehow merge for jurisdictional purposes. As defendant himself emphasizes in other parts of his briefing, "they were separate cases based on separate events with guilt determined in separate judicial proceedings." "And because one case received a determinate term and the other an indeterminate term, the two sentences did not mesh."

Furthermore, defendant's characterization of the aggregate sentence as "void" is entirely dependent upon the merits of his claims regarding the VOP case—a cause over which we do not presently have jurisdiction. "The merits of an appeal cannot confer jurisdiction where it is lacking." (*Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 223–224.) The same is true of the rule permitting correction of unauthorized sentences. "The unauthorized sentence doctrine does not itself create jurisdiction for an appellate court to rule on the legality of a sentence." (*People v. Hernandez* (2024) 103 Cal.App.5th 1111,

---

[1]The conclusions we draw from the absence of a notice of appeal concerning PCF322492 do not mean we are certain appellate jurisdiction would otherwise exist if such a notice had been filed. We express no opinion in that regard.

1118.)  "'In order to invoke the unauthorized sentence rule in the first instance, … the reviewing court "must have jurisdiction over the judgment." [Citation.]'" (*Ibid.*)

Defendant attempts to avoid the jurisdictional problem by alleging sentencing error in the attempted murder case (PCF354765A) with regard to the denial of custody credits. Based on his alleged entitlement to a seven-year sentence in the VOP case (PCF322492), rather than the 14-year term imposed during the July 2023 remand proceedings, defendant argues the allocation of 2,724 days (approximately 7.5 years) of custody credit to the VOP sentence shows there are excess credits that should have been applied to the attempted murder sentence. Once again, the claim of sentencing error in PCF354765A is wholly dependent upon the merits of his attack on the judgment in PCF322492. As discussed, the existence of jurisdiction does not turn on the merits of a claim.[2]  (*Baker v. Castaldi*, *supra*, 235 Cal.App.4th at pp. 223–224.)

---

[2]Although the merits of his arguments regarding PCF322492 are outside the scope of this appeal, we note defendant's claimed entitlement to a seven-year sentence is not as simple as portrayed in his briefing. His double jeopardy argument is based on the rule that "once execution of a *valid* sentence has commenced, the trial court may not change it to *increase* the sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 348–349.) Defendant repeatedly, but incorrectly, refers to the seven-year prison sentence ordered in May 2019 as the "original sentence" in the VOP case. However, as we have explained, the original sentence was the stipulated 14-year prison term imposed in December 2015. Execution of the 14-year sentence was stayed pending successful completion of probation, which did not happen because defendant violated the terms of his probation. It has long been held "that '[o]n revocation of probation, if the court previously had imposed sentence, the sentencing judge must order *that exact sentence* into effect ….'" (*People v. Scott* (2014) 58 Cal.4th 1415, 1424; accord, *People v. Howard* (1997) 16 Cal.4th 1081, 1095 [holding "if the court has actually imposed sentence, and the defendant has begun a probation term representing acceptance of that sentence, then the court has no authority, on revoking probation, to impose a lesser sentence at the precommitment stage"].) A court with jurisdiction to resolve defendant's claims regarding PCF322492 may have to determine whether the seven-year prison term imposed in May 2019 was an unauthorized sentence. (See *People v. Cates* (2009) 170 Cal.App.4th 545, 552 ["Correction of an unauthorized sentence is proper 'even if the correction results in a harsher punishment.' [Citation.] An unauthorized sentence is '"subject to judicial correction when it ultimately [comes] to the attention of the trial court …"'"].)

Our lack of appellate jurisdiction over PCF322492 does not mean defendant is without recourse.  A sentence imposed in excess of a trial court's jurisdiction may be reviewed on habeas corpus.  (*People v. Miller* (1992) 6 Cal.App.4th 873, 877.)  If defendant wishes to challenge any aspect of the judgment in PCF322492, the vehicle for doing so is a petition for a writ of habeas corpus.  (See *People v. Hernandez*, *supra*, 103 Cal.App.5th at p. 1124; *People v. Boyd* (2024) 103 Cal.App.5th 56, 61.)

## DISPOSITION

The protective order issued pursuant to Penal Code section 136.2, subdivision (i)(1), is stricken from the judgment.  In all other respects, the judgment is affirmed.


PEÑA, J.

WE CONCUR:


HILL, P. J.


MEEHAN, J.

22.